UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 09-87-JBC

BOBBIE JEAN ELKIN,                                                               PLAINTIFF,

V.                          **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                        DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Bobbie Jean Elkin's appeal of the Commissioner's denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") (R. 6, 7). The court will deny the Commissioner's motion and grant Elkin's motion, in that the case will be remanded to the Social Security Administration for further proceedings.

I.      **Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the relevant legal standards were properly applied. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *Ibid.*  Rather, the ALJ's decision must be affirmed if it is reasonably supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II.    The ALJ's Determination**

At the time of the alleged disability onset date, Elkin was a thirty-eight-year-

old female.  *See* AR 9, 54.  She alleges disability beginning on January 29, 2004, due to a variety of physical and mental impairments.  *See* AR 9, 13.  Elkin filed claims for DIB and SSI on November 14, 2006.  *See* AR 9.  The claims were denied initially on February 12, 2007, and again upon reconsideration on March 29, 2007.  *Ibid*.  After a hearing on April 4, 2008, Administrative Law Judge ("ALJ") Frank Letchworth determined that Elkin has not suffered from a disability as defined by the Social Security Act since January 29, 2004.  *See* AR 18.

At Step 1, the ALJ found that Elkin had not engaged in substantial gainful activity since the alleged disability onset date.  *See* AR 11.  At Step 2, the ALJ found that Elkin has the following severe impairments: degenerative disc disease, depression, and anxiety.  *See* AR 11-13.  At Step 3, the ALJ determined that Elkin does not have an impairment or a combination of impairments that meets or medically equals one or more listed impairments in the Code of Federal Regulations.  *See* AR 13-15.

In assessing Elkin's claim at Steps 4 and 5, the ALJ found that she had a residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), except for work requiring more than occasional climbing, stooping, bending, crouching, or crawling.  Further, he found that she requires a sit/stand option every 30 minutes and is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an

unreasonable number and length of rest periods, and to interact appropriately with the general public.  He found that she is able to understand and remember simple and detailed instructions, sustain attention for simple and detailed tasks for 2-hour segments in an 8-hour day, tolerate co-workers and supervisors in a non-public setting, and adapt to changes as needed in a work setting not highly pressured.  *See* AR 15-16.  At Step 4, the ALJ found Elkin unable to perform her past relevant work as a maid.  *See* AR 16-17.  Finally, at Step 5, the ALJ determined that due to the her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform.  *See* AR 17-18.  The Appeals Council denied her request for review on January 15, 2009, and she commenced this action.  *See* AR 1; R. 1.

**III.   Analysis**

The issue of concern in the ALJ's decision involves a psychologist, Dr. Jessica M. Huett, who examined Elkin.  In the consultative examination for the Social Security Administration, she found generalized anxiety disorder, social phobia, and depressive disorder, not otherwise specified.  The examination led Huett to summarize:

> The person's capacity to understand, remember, and carry out instructions towards performance of simple, repetitive task[s] is affected by the impairment with moderate limitations noted.  The person's ability to tolerate stress and pressure of day-to-day employment is affected by the impairment with moderate-to-marked limitations noted.  The person's ability to sustain attention and concentration towards

> the performance of simple, repetitive task[s] is affected by the impairment with moderate-to-marked limitations noted. The person's capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting is affected by the impairment with moderate-to-marked limitations noted.

AR 281.

During a hearing of the case, in posing hypothetical questions to a Vocational Expert ("VE"), Anne Thomas, the ALJ referenced the limitations reported by Huett only when he asked the following question:

> Next hypothetical. If the moderate limitations identified, actually I only identified one moderate. Let me go back and rephrase here. Assume the person is markedly limited in the ability to maintain concentration and attention for extended periods; markedly limited in ability to interact with other persons; markedly limited in the ability to tolerate job stress. Would that affect the answer to the prior hypothetical?

AR 76. The VE answered, "At that point, with markedly limited restrictions, that would eliminate the, a person's ability to work at all." *Ibid.* At no time before or after that question did the ALJ include any version of the limitations noted by Huett in a hypothetical question to the VE.

In his findings at Step 3, the ALJ states, "In social functioning, the claimant has no greater than moderate difficulties." He further states, "With regard to concentration, persistence or pace, the claimant has no greater than moderate difficulties." AR 14. In explaining his finding of Elkin's RFC, he states, "Dr. Huett

5

did find some 'moderate to marked' functional limitations following consultative evaluation[,] but these findings are not consistent with claimant's report that she has sought work and actually engaged in work activity long after her alleged onset date[,] and are also inconsistent with her activities of daily living[,] which remain functional per Dr. Atienza." AR 16.

The Commissioner argues that the ALJ was not required to give weight to Huett's opinion under 20 C.F.R. 416.297. *See* R. 7. Generally, more weight is given to examining sources, such as Huett, than to non-examining sources, *see* 20 C.F.R. 404.1527, but factors such as frequency of the examination, supportability of the opinion, consistency of the opinion with the record, and others may be considered. The reasons given by the ALJ for discounting Huett's opinion may not apply to the least severe, or "moderate," functional limitations described by Huett. These limitations in moderate form, especially in regard to mental health, may not be inconsistent with the claimant's report that she has sought work and actually engaged in work activity – not out-of-the-ordinary activities, even for a person with significant mental health issues – and her activities of daily living, reported as functional by Atienza, a treating physician. Indeed, however, the decision whether to discount Huett's opinion based on an appropriate review of all the evidence in the case is within the purview of the ALJ, and normally will not be disturbed. Yet the ALJ's findings at Step 3 show that he found that Elkin has some cognizable, though not greater than moderate, degrees of difficulty in social functioning,

6

concentration, and persistence. These limitations were not conveyed to the VE. By asking the VE via hypothetical to include "marked" limitations instead of ones that are "moderate," or even "mild," the ALJ avoided the relevant hypothetical in favor of one that did not accurately describe Elkin in accordance with any source's opinions and his own findings at Step 3.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Early v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239, 241 (6th Cir. 2002) and *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). The hypothetical questions to a VE, in contrast with the RFC, should be a more complete assessment of Elkin's physical and mental state, and should include an accurate portrayal of individual physical and mental impairments. *See White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 789 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). By including in the hypotheticals a description of the limitations described by Huett only as "marked," the ALJ effectively failed to include an accurate description, the functional equivalent of not including the limitations at all. A hypothetical question to the VE reflecting a description of the limitations as "moderate-to-marked," as Huett described them, "moderate," "mild," or even "slight," may yield an answer

from the VE that is different, or even the same as "that would eliminate . . . a person's ability to work at all." AR 76.

### IV. Conclusion

The only examining mental health source's reported limitations of Elkin were effectively excluded from all hypotheticals posed to the VE, but the ALJ's references to these limitations in his findings at Step 3 reveal that he found them to exist to a recognizable degree. The disregard of Huett's opinions in the hypotheticals, while arguably permissible in this case otherwise, is not entirely consistent with other findings of the ALJ. Due to this defect, the ALJ may not properly rely on testimony from the VE to carry his burden at Step 5 of the sequential evaluation. Therefore, substantial evidence does not exist for the ALJ's finding that there exist jobs in significant numbers in the national economy which Elkin can perform. *See Early*, 594 F.3d at 516. Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Bobbie Jean Elkin's motion for summary judgment is **GRANTED** to the extent that her case is **REMANDED** for proceedings consistent with this opinion.

Signed on  March 30, 2010



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY